IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL NO.: 4:11-413-RBH |
| | ) |
| | ) |
| vs. | ) |
| | ) |
| JOSEPH ROBERT GUERNSEY and | ) |
| BENEDICT GUTHRIE OLBERDING | |

<u>UNITED STATES' SENTENCING MEMORANDUM IN SUPPORT OF FORFEITURE</u>

The United States submits this memorandum in support of

- (1) the government's forthcoming motion for the imposition of a money judgment in the amount of $1,000,000 against the defendants, Joseph Robert Guernsey ("Guernsey") and Benedict Guthrie Olberding ("Olberding"), representing the amount of gross proceeds of the illegal scheme to which they pled guilty; and,

- (2) the government's forthcoming motion for the forfeiture of $1,000,000 seized on January 24, 2013, from one of Olberding's business bank accounts with BB&T.

<u>STATEMENT OF THE CASE</u>

The material facts relevant to the proposed forfeiture are as follows. Guernsey and Olberding were indicted for bank fraud (18 U.S.C. § 1344) involving a continuing fraud scheme which took place between March 2007 and June 2009. Pursuant to Rule 32.2(a), Fed. R. Crim. P., the Indictment contains a forfeiture allegation notifying the defendants, *inter alia*, that upon conviction, they are to be jointly and severally liable for a money judgment in the amount of at least $1,000,703,[1] The money judgment of $1,000,000 proposed by the government represents the gross proceeds of the fraud scheme (i.e., the

---

[1] The actual amount of gross proceeds of the fraud scheme is $1,000,000, which constitutes the amounts of the loans obtained, as set forth in Counts 1, 2, and 3 of the Indictment. Such loan amounts were $145,000 (Count 1); $95,000 (Count 2); and, $760,000 (Count 3).

1

loan amounts made pursuant to the scheme), as set forth in Counts 1 through 3. The forfeiture allegation also seeks forfeiture of substitute assets, pursuant to 21 U.S.C. § 853(p).

On October 28, 2011, Olberding and Guernsey entered guilty pleas to Count 3 of the Indictment (Docket Entries 76, 77), pursuant to plea agreements in which they agreed to cooperate in matters related to forfeiture. *See* Olberding Amended Plea Agreement (Docket Entry 74 (Par. 11)); Guernsey Plea Agreement (Docket Entry 66 (Par. 12)).

On January 24, 2013, pursuant to a seizure warrant issued by United States Magistrate Judge Kaymani D. West, the government seized $1,000,000 from one of Olberding's bank accounts with BB&T (Account #xxxxxx5563, in the name of Southern States Mortgage Company, Inc.). The government anticipates filing motions and proposed orders of forfeiture seeking imposition of a money judgment on Guernsey and Olberding in the amount of $1,000,000, and, with respect to Olberding, seeking the forfeiture, as substitute property, of the $1,000,000 recently seized.

## APPLICABLE LEGAL PRINCIPLES AND AUTHORITIES

A.     Forfeiture Is mandatory.

Applicable statutory authorities make forfeiture a mandatory part of sentencing. *See*, 18 U.S.C. § 3554, "Order of Criminal Forfeiture" ("The court, in imposing sentence on a defendant . . . **shall** order that the defendant forfeit property to the United States . . . .") (emphasis added); 18 U.S.C. § 982(a)(1), (a)(2), and (a)(3) (forfeiture is mandatory upon conviction for various non-drug offenses); 21 U.S.C. § 853(a) (forfeiture is mandatory upon conviction for drug offenses); and, 28 U.S.C. 2461(c) ("If the defendant is convicted of the offense giving rise to the forfeiture, the court **shall** order the forfeiture of the property as part of the criminal case. . . .") (emphasis added).

That forfeiture is mandatory is underscored when considering that, in cases involving both forfeiture and restitution, a court must order both. *See*, United States v. Browne, 505 F.3d 1229, 1281 (11th Cir. 2007) (restitution focuses on the victim; forfeiture focuses on the defendant, imposing punishment and forcing him to disgorge the proceeds of the offense; both are mandatory); United States v. O'Connor, 321 F. Supp. 2d 722 (E.D. Va. 2004) (forfeiture and restitution serve different purposes; "forfeiture generally serves to remove from an offender the fruits and instrumentalities of his crime, and thereby provides a powerful disincentive to commit the crime in the first instance"; restitution serves primarily to compensate the victim); United States v. Calloway, 2008 WL 3992156, *2 (W.D.N.C. 2008) (contrasting forfeiture and restitution: forfeited property belongs to the government; a restitution order puts the government in the role of a collector for the victims; the government may apply forfeited funds to restitution but need not do so).

Moreover, consistent with the mandatory nature of forfeiture, as a general rule, a defendant is not entitled to an offset against a restitution order to reflect the amount forfeited, or *vice versa*. *See*, United States v. Alalade, 204 F.3d 536 (4th Cir. 2000) (under the Mandatory Victims Restitution Act, the defendant is not entitled to an offset against the restitution order for the value of the fraud proceeds that the government forfeited administratively); United States v. Bright, 353 F.3d 1114 (9th Cir. 2004) (same, following Alalade).

B.  <u>Money judgments, like forfeiture generally, are a form of punishment designed, in part, to deprive defendants of assets and wealth associated with their crimes, and to require repayment of all ill-gotten gains, whether dissipated or not. Accordingly, a defendant's present ability to pay a money judgment is irrelevant. Like other criminal forfeiture concepts, a money judgment, where supported by the evidence, and where sought by the government, is mandatory.</u>

The authority of courts to impose money judgments as forfeiture is now codified at Rule 32.2(b), Fed. R. Crim. P.  The concept was first recognized in the case of United States v. Ginsburg, 773 F.3d 798 (7th Cir. 1985) (*en banc*).  There, the court held the forfeiture is a personal judgment that requires the defendant to pay the total amount derived from the criminal activity "regardless of whether the specific dollars received from that activity are still in his possession." Id., 801-02.  The Eleventh Circuit reached the same conclusion in United States v. Navarro-Ordas, 770 F.3d 959 (11th Cir. 1985), holding that Congress' purpose in enacting the criminal forfeiture statutes was to ensure the defendant was separated from the proceeds of his offense, and that allowing a criminal to escape the forfeiture sanction if the government could not locate the proceeds would serve only to reward criminals who were successful in hiding or dissipating their profits.  Thus , to carry out Congressional intent, a court must be able to order the defendant to pay a judgment equal to the proceeds obtained from the offense, "regardless of what he may actually have done with the profits." Id., 970.

The Fourth Circuit reached the same conclusion in United States v. Amend, 791 F.2d 1120 (4th Cir. 1986).  There, the defendant argued that the government had no evidence that forfeitable assets were still in existence.  Relying on Ginsburg, the court held that such proof is not required in a criminal forfeiture case, where the purpose of the sanction is not to recover specific property, but to ensure that the defendant suffers punishment commensurate with the value of the proceeds he received – and dissipated – in the course of the offense.  Id., at 1127& n.6.  Thus, part of the reasoning behind imposing a money judgment is that the defendant's present ability to pay a money judgment is immaterial.

A recent case from the Ninth Circuit merits further discussion. In United States v. Newman, 659 F.3d 1235 (9th Cir. 2011), one defendant pled guilty to bank robbery and agreed to forfeit the stolen funds of approximately $5,000. Another defendant pled guilty to bank fraud, and agreed to forfeit the gross amount that he received from the bank, which the parties agreed was $1 million.

The district court, believing that it had the discretion to do so, declined to impose the money judgments, and instead ordered the defendants to pay restitution to the victims, with credit for the amounts each victim may have already recovered. The government appealed both cases, which were consolidated.

The Ninth Circuit reversed, holding that criminal forfeiture is mandatory: "When the government has met the requirements for criminal forfeiture, the district court must impose criminal forfeiture, subject only to statutory and constitutional limits. . . . Unlike a fine, the district court has no discretion to reduce or eliminate mandatory criminal forfeiture." Id., 1240. Thus, "[t]o the extent the district court sought to reduce or eliminate criminal forfeiture as part of its sentencing discretion, the district court erred." Id., 1241.

That the defendants were also ordered to pay restitution made no difference. Forfeiture and restitution serve different purposes: forfeiture is a form of punishment for the commission of the offense, while the purpose of restitution is to make the victim whole again. "In the absence of a statute authorizing a reduction in forfeiture, the district court may not reduce forfeiture because of an order of restitution to a victim, or because the victim already has been made whole." Id., 1241.

The panel disagreed with the defendants that this constituted a 'double dip.' "Paying restitution plus forfeiture at worst forces the offender to disgorge a total amount equal to

5

twice the value of the proceeds of the crime, [which] is in no way disproportionate to the harm inflicted upon government and society by the offense." Id., 1241.

The panel then turned to defendants' argument that, regardless of whether criminal forfeiture is mandatory or not, there is no statutory provision for imposing forfeiture in the form of a money judgment when the defendant has dissipated the proceeds of his crime. That issue, the court said, has already been resolved in the government's favor in the Ninth Circuit and elsewhere:

> We have explained that the amount of "proceeds" does not mean just the amount of money that the defendant has when he or she is apprehended. Congress sought to punish equally the thief who carefully saves his stolen loot and the thief who spends the loot on "wine, women, and song." *See* Casey, 444 F.3d at 1073–74 (quoting the "oft-quoted passage [by] the Seventh Circuit ... that 'a racketeer who dissipates the profits or proceeds of his racketeering activity on wine, women, and song has profited from ... crime' " and therefore must disgorge those funds "regardless of whether those funds were still in his possession" (ellipsis in original)) (quoting United States v. Ginsburg, 773 F.2d 798, 802 (7th Cir.1985)). "Imposing a money judgment despite [a criminal's] lack of assets at sentencing negates any benefit he may have received from the money, ensuring that, in the end, he does not profit from his criminal activity. Id. at 1074. This holds true even if the criminal spent some of the proceeds as part of the criminal enterprise. *See* id. at 1076 n. 4 (holding that the defendant must forfeit the full $7,000 that he received from the drug transaction even though he paid his drug boss $6,800 and "profited" only $200). "Requiring imposition of a money judgment on a defendant who currently possesses no assets furthers the remedial purposes of the forfeiture statute by ensuring that all eligible criminal defendants receive the mandatory forfeiture sanction Congress intended and disgorge their ill-gotten gains, even those already spent." Id. at 1074.

Id., 1243.

Accordingly, the court concluded, when the government seeks a money judgment pursuant to Rule 32.2(b), there is nothing for the district court to do "other than determine the amount of money that the defendant will be ordered to pay" in terms of the applicable forfeiture statute. Id., at 1242.

C.  **A defendant is liable in forfeiture for the entire amount of proceeds associated with a continuing fraud scheme.**

In this case, the defendant stands convicted of a mail fraud count related to a continuing fraud scheme. There is ample authority that if a fraud case is alleged as a continuing scheme, the defendant is liable for the full amount derived from the scheme, even if the defendant is convicted of only a single substantive count related to the scheme. *See*, United States v. Boesen, 473 F. Supp. 2d 932, 952 (S.D. Iowa 2007) (in a fraud case, forfeiture is imposed because the defendant has been convicted of perpetrating a scheme; it does not matter how many executions of that scheme were alleged in the indictment; hence a defendant convicted of 82 substantive counts of health care fraud must forfeit the proceeds of the entire scheme, not just the proceeds involved in the 82 counts on which he was convicted); United States v. Budden, 2012 WL 1315366 (April 17, 2012, D.S.C.) (Currie, J.) (following Boesen, money judgment forfeiture of gross proceeds of entire fraud scheme); United States v. Adegboye, 2011 WL 5025531 (W.D. Okla. 2011) (once defendant is convicted of a single execution of a fraud scheme, the government is entitled to a forfeiture money judgment representing the proceeds of the entire scheme; that defendant was acquitted on a related conspiracy count makes no difference); United States v. Venturella, 585 F.3d 1013, 1015, 1016-17 (7th Cir. 2009) (forfeiture in a mail fraud case "is not limited to the amount of the particular mailing but extends to the entire scheme;" defendant's guilty plea to one substantive count involving $477 rendered her liable for money judgment of $114,000).

D.  **Codefendants are jointly and severally liable for the amount of the money judgment.**

In a multi-defendant case, each of the defendants is jointly and severally liable for the forfeiture of the proceeds of the offense or the money otherwise involved in it. *See*

7

United States v. Bollin, 264 F.3d 391, 418-19 (4th Cir. 2001) (even minor participant who received only $30,000 for his role in the scheme may be liable for full $1.2 million judgment if the laundering of that amount was foreseeable to him; forfeiture of such foreseeable amount does not violation the Excessive Fines Clause); United States v. Roberts, 660 F.3d 149, 165 (2d Cir. 2011) (joint and several liability for the amount of the money judgment in a drug case is mandatory), *aff'g* United States v. Roberts, 696 F. Supp.2d 263, 267 (E.D.N.Y. 2010) (collecting cases); United States v. Faulk, 340 F. Supp. 2d 1312, 1313 (M.D. Ala. 2004) (defendants are jointly and severally liable for money judgment equal to the $1.1 million in fraud proceeds that they conspired to launder); United States v. Basciano, 2007 WL 29439, *3-4 (E.D.N.Y. 2007) (defendants are jointly and severally liable for money judgment based on reasonable estimate of the proceeds of their various racketeering activities; estimate does not have to be precise, but cannot be "overly speculative"

Joint and several liability is not limited to conspiracy cases. United States v. Black, 526 F. Supp.2d 870, 878 (N.D. Ill. 2007) (defendants are jointly and severally liable if the evidence establishes by a preponderance of the evidence that they jointly participated in a scheme to defraud).

It makes no difference whether a given defendant kept the money for himself, passed it on to a third party, or retained only a fraction in comparison to the amounts retained by his confederates. *See* United States v. Spano, 421 F.3d 599, 603 (7th Cir. 2005) (all coconspirators are jointly and severally liable for the amount of the forfeiture regardless of how much or how little they benefitted from the conspiracy); United States v. Genova, 333 F.3d 750, 761 (7th Cir. 2003) (because all codefendants are liable for the sum

of the proceeds realized by each other, the payer of a kickback to a city official is liable for what he received from the city as well as the amount of the kickback, and the city official is liable for the same).

It also does not matter whether the forfeiture is based, in part, on aspects of the offense in which a given defendant did not personally participate. *See* United States v. Candelaria-Silva, 166 F.3d 19, 44 (1st Cir. 1999) (even minor participants in drug conspiracy are jointly and severally liable for forfeiture of the full amount of the proceeds; no Eighth Amendment violation); United States v. Heller, 2011 WL 5865914, *3 (N.D. Okla. 2011) (all members of a conspiracy are jointly and severally liable; physician who provided prescriptions in a steroid distribution scheme was liable for the full amount, even if he was not a full partner in the scheme but only received $50 per prescription for his services);

Most courts hold that a defendant's joint and several liability is limited to the amount foreseeable to him.[2]  See, *United States v. Elder,* 682 F.3d 1065 (8th Cir. 2012) (the doctrine of joint and several liability comes from conspiracy law, in which each conspirator is liable for the acts of the others, but only to the extent that such acts are foreseeable; citing *Pinkerton* and extending *Simmons* to all conspiracies); United States v. Fruchter, 411 F.3d 377, 384 (2d Cir. 2005) (RICO defendant is liable for forfeiture of all proceeds of the offense foreseeable to him including proceeds traceable to conduct committed by others and on which he was personally acquitted); United States v. Gotti, 459 F.3d 296, 347 (2d

---

[2]  The Eleventh Circuit holds that there is no such limitation.  United States v. Browne, 505 F.3d 1229, 1279 (11th Cir. 2007) (RICO defendants are liable for the full amount of proceeds even if the amount obtained by one was not foreseeable to the other; the foreseeability requirement should not be imported from the sentencing guidelines or from *Pinkerton* theory to forfeiture matters).

Cir. 2006) (following Fruchter; in a RICO case, each co-defendant is liable for the full amount of the proceeds of the racketeering activity foreseeable to him).

A defendant may only be held jointly and severally liable, however, for a forfeiture based on an offense for which the defendant was convicted.  If, for example, a defendant is convicted only of fraud, while his co-defendants are convicted of both fraud and money laundering, he is jointly and severally liable to forfeit the proceeds of the fraud, but he has no liability at all for a forfeiture based solely on the money laundering offense.  See United States v. Wingerter, 369 F. Supp. 2d 799, 809 n.19 (E.D. Va. 2005) (because defendant, unlike his codefendants, is charged only with fraud and not with money laundering, his joint and several liability is limited to the amounts involved in the fraud and cannot include amounts involved only in the money laundering); United States v. McKay, 506 F. Supp. 2d 1206, 1214-15 (S.D. Fla. 2007) (although convicted of other offenses, codefendant cannot be jointly and severally liable for the forfeiture resulting from the offense on which he was acquitted).

Finally, if two or more defendants are held jointly and severally liable for a forfeiture, and the Government recovers all or part of the money from one of them, the others are entitled to a credit against their remaining liability.  See United States v. Hurley, 63 F.3d 1, 23 (1st Cir. 1995) (the Government can collect the total amount subject to forfeiture only once, but subject to that cap, it can collect from any defendant so much of that amount as was foreseeable to that defendant); United States v. Cleveland, 1997 WL 602186, *3 (E.D. La. 1997) (same); United States v. Saccoccia, 62 F. Supp. 2d 539, 542 (D.R.I. 1999) (if defendants are jointly and severally liable, each defendant is entitled to know how much has been forfeited by his codefendants and is entitled to credit for such amount, but

defendant is not entitled to credit for amounts forfeited by unindicted coconspirators).  *But see* United States v. Ereme, 339 Fed. Appx. 340, 342-43 (4th Cir. 2009) (defendant is entitled to credit against the forfeiture order for the amounts forfeited by co-defendants only if he and the co-defendants where held jointly and severally liable; if the court issues a forfeiture order against only one defendant, that defendant is solely responsible for the entire forfeiture); United States v. Tedder, 403 F.3d 836, 841 (7th Cir. 2005) (defendant not entitled to credit for amounts forfeited by his codefendants where defendant and codefendants were liable to forfeit different property).

E.     Forfeiture of substitute property to satisfy a money judgment.

21 U.S.C. § 853(p) provides for the forfeiture of substitute property ("substitute assets").  The provisions of 21 U.S.C. 853 are applicable to all criminal forfeitures under 28 U.S.C. 2461(c).  In this case, because the government has not been able to trace the funds seized to the fraud, the government contends that the seized funds from Olberding's bank account forfeitable as substitute assets.

The court may order the forfeiture of substitute assets to satisfy a forfeiture money judgment where the money judgment represents the value of the proceeds of the offense that cannot be forfeited directly for one of the reasons set forth in Section 853(p).  *See* United States v. Candelaria-Silva, 166 F.3d 19 (1st Cir. 1999) (once the Government has obtained a money judgment, it may forfeit defendant's real property in partial satisfaction of that judgment); United States v. Davis, 177 F. Supp.2d 470 (E.D. Va. 2001) (if property cannot be forfeited as directly traceable to the offense, it can be forfeited as a substitute asset and used to satisfy the money judgment); United States v. Davis, 2001 WL 47003 (S.D.N.Y. 2001) (property seized at time of arrest need not be returned at end of criminal

case if it can be forfeited as substitute assets in satisfaction of money judgment); United States v. Messino, 917 F. Supp. 1307, 1308 (N.D. Ill. 1996) (court ordered forfeiture of motorcycle as substitute asset in partial satisfaction of money judgment).

Any property of a defendant may be forfeited as a substitute asset, including property that was originally listed in the indictment, information, or bill of particulars as directly forfeitable property. See United States v. Henry, 850 F. Supp. 681 (M.D. Tenn. 1994), aff'd, 64 F.3d 664, 1995 WL 478635 at *4 (6th Cir. 1995) (Table) ("the jury verdict indicating that the Ewing Court residence should not be forfeited does not prevent the forfeiture of the property as a substitute asset . . . the very nature of a substitute asset requires that it is not property which is directly forfeitable"); United States v. Candelaria-Silva, 166 F.3d 19 (1st Cir. 1999) (there was nothing improper in prosecutor's decision to move to strike property from the forfeiture allegation before it was submitted to the jury and later seek forfeiture of same property as a substitute asset); United States v. McCorkle, No. 6:98-CR-52-ORL-19JGG (M.D. Fla. 2001) (prosecutor can drop civil forfeiture case against asset and seek forfeiture of same property as substitute asset in criminal case).

F.  The amount subject to forfeiture and the amount of restitution (loss) are not the same thing.

Forfeiture and restitution serve different purposes and are not mutually exclusive: restitution focuses on the victim and the losses he has suffered, while forfeiture focuses on the defendant, imposing punishment and forcing him to disgorge the proceeds of the offense. See United States v. Calloway, 2008 WL 3992156, *2 (W.D.N.C. Aug. 27, 2008) (contrasting forfeiture and restitution: forfeited property belongs to the government; a restitution order puts the government in the role of a collector for the victims; the government may apply forfeited funds to restitution but need not do so); United States v.

Navarrete, 667 F.3d 886, 887-88 (7th Cir. 2012) (forfeiture is measured by the gain to the defendant; restitution is limited to the victim's loss); United States v. Hoffman-Vaile, 568 F.3d 1335, 1344-45 (11th Cir. 2009) (same); United States v. O'Connor, 321 F. Supp. 2d 722 (E.D. Va. 2004) (forfeiture and restitution serve different purposes; "forfeiture generally serves to remove from an offender the fruits and instrumentalities of his crime, and thereby provides a powerful disincentive to commit the crime in the first instance"; restitution serves primarily to compensate the victim);  United States v. Genova, 333 F.3d 750, 762 (7th Cir. 2003) (restitution is based on loss; forfeiture is based on gain; therefore, in some cases restitution may net more for the victim than forfeiture would net for the Government; but the court will not second guess the Government's decision to pursue forfeiture instead of restitution);

Thus, the amount of forfeiture and the amount of restitution will often be different. And because they serve different purposes, the defendant may be ordered to pay restitution and forfeit property without off-setting one against the other. *See* Navarrete, 667 F.3d at 888 (restitution and forfeiture are cumulative); United States v. Newman, 659 F.3d 1235, 1241-43 (9th Cir. 2011) (because forfeiture and restitution serve different purposes—one for punishment, the other to make the victim whole—the defendant must pay both; "the district court may not reduce forfeiture because of an order of restitution to a victim or because the victim already has been made whole); United States v. Pescatore, 637 F.3d 128, 137 (2nd Cir. 2011) (forfeiture and restitution are separate remedies with different purposes; defendant was not entitled to have the Government apply $2.5 million in forfeited funds to a $3 million restitution order); United States v. McGinty, 610 F.3d 1242, 1247-48 (10th Cir. 2010)  (forfeiture and restitution serve different purposes and both are

mandatory; ordering a defendant to pay a money judgment equal to the proceeds of his offense and to pay restitution to his victim is not unfair) (collecting cases).

G.   Applicable Forfeiture Statutes

Procedurally, the provisions of 21 U.S.C. § 853 and Rule 32.2 govern criminal forfeiture proceedings. As referenced in the forfeiture allegation of the Indictment, the relevant "proceeds" forfeiture statutes applicable to bank fraud are 18 U.S.C. § 981(a)(1)(C) (as incorporated by 28 U.S.C. § 2461(c) (civil forfeiture of, *inter alia*, proceeds of specified unlawful activities) and § 982(a)(2) (criminal forfeiture of, *inter alia*, violations of 18 U.S.C. § 1344). To the extent the government relies on a "proceeds" theory of forfeiture, it will likely rely on Section 982(a)(2).

The "substitute assets" provisions of 21 U.S.C. 853(p) apply to property which is not known to be directly forfeitable proceeds.

H.   Under the "but for" test, "proceeds" generally includes any payments made to a defendant related to the fraud scheme.

The determination of the proceeds of an offense requires the application of the "but for" test. Under this test, the gross proceeds of an offense include any property the defendant would not have obtained or retained but for the criminal offense. *See*, United States v. Cherry, 330 F.3d 658, 669 n.17 (4th Cir. 2003) (court properly instructed the jury that it had to find, by a preponderance of the evidence, that the sum for which the government was seeking a money judgment fairly represented the amount derived from proceeds that the defendant obtained, directly or indirectly, from money laundering charges (appyling 18 U.S.C. § 982); United States v. Poulin, 461 Fed.Appx., 272, 288 (4th Cir. 2012) (per curiam) (forfeiture of gross proceeds is explicit in health care fraud cases under 982(a)(7); United States v. Boulware, 384 F.3d 794, 813 (9th Cir. 2004) (defendant must

forfeit gross proceeds of fraudulent loan without credit for the amount he repaid); United States v. Nicolo, 597 F. Supp.2d 342, 350 (W.D.N.Y. 2009) (under 18 U.S.C. § 981(a)(1)(C), applying the "but for" test, all property which the defendant received as a consequence of a fraud scheme is forfeitable); United States v. Reiner, 397 F. Supp. 2d 101 (D.Me. 2005) (pursuant to 18 U.S.C. § 981(a)(1)(C), all revenue of health club that was a front for a prostitution business was proceeds of the prostitution offense because the club would not have existed, and thus would have had no income at all, but for the illegal activity; that some of its revenue was for legal services is therefore irrelevant), aff'd 500 F.3d 10 (1st Cir. 2007); United States v. Hoffman-Vagile, 568 F.3d 1335, 1344 (11th Cir. 2009) (applying the "but for" test: health care provider convicted of Medicare fraud is liable (under 18 U.S.C. § 982(a)(7)) to forfeit both the funds she received from Medicare and the funds she received from private insurers because, she would not have received either but for her fraudulent billings).

## CONCLUSION

Applying the foregoing authorities, the United States respectfully requests entry of a money judgment against Olberding and Guernsey in the amount of $1,000,000, representing the gross proceeds of the fraud scheme.  The United States further requests the forfeiture of $1,000,000 seized on January 24, 2013, from Olberding's business bank account with BB&T, as a substitute asset to satisfy the money judgment.

       Respectfully submitted,

       WILLIAM N. NETTLES
       United States Attorney

   BY: <u>s/ Stanley D. Ragsdale</u>
       STANLEY D. RAGSDALE (I.D. No. 3197)
       Assistant United States Attorney
       1441 Main St., Suite 500
       Columbia, SC 29201

       Telephone: (803) 929-3000

Columbia, South Carolina

January 24, 2013