1

```
        IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF SOUTH CAROLINA
                   FLORENCE DIVISION


UNITED STATES OF AMERICA,        )
                                 ) Case No. 4:11-cr-413-RBH
            Plaintiff,           )
                                 ) April 11, 2013
        -vs-                     )
                                 ) 5:25 p.m.
BENEDICT GUTHRIE OLBERDING,      )
                                 ) Florence, SC
            Defendant.           )
_____ )



        BEFORE THE HONORABLE R. BRYAN HARWELL,
      UNITED STATES DISTRICT JUDGE, PRESIDING
                    SENTENCING


A P P E A R A N C E S:

For the Government:    MR. WILLIAM E. DAY, II
                       Assistant United States Attorney
                       P.O. Box 1567
                       Florence, SC  29503


For the Defendant:     MR. JOSEPH MCCULLOCH, JR.
                       Attorney at Law
                       P.O. Box 11623
                       Columbia, SC  29211


Court Reporter:        Mary A. Schweinhagen, RMR, CRR
                       401 West Evans Street
                       Florence, SC  29501


            STENOTYPE/COMPUTER-AIDED TRANSCRIPTION

                    *** *** *** ***
```

1          THE COURT: If you'll call this case, please.
2          MR. DAY: Your Honor, this is the case of United
3   States versus Bennedict Guthrie Olberding, criminal number
4   4:11-413, for sentencing.
5          THE COURT: All right. For the record, I have
6   Mr. McCulloch here representing Mr. Olberding, and
7   Mr. Olberding's present as well.
8          Good afternoon, Mr. McCulloch.
9          MR. MCCULLOCH: Your Honor. Good to see you. I'm
10  sorry we're making you work this late.
11         THE COURT: That's all right. We do it about
12  every day here in the Florence division. But let's get on
13  and take a look at this matter.
14         For the record, Mr. Olberding pled guilty on
15  October 28, 2011, pursuant to a plea agreement to Count 3,
16  bank fraud, 18 U.S.C., Sections 1344 and 2.
17         At that time I asked for a presentence report to
18  be prepared by probation. One has been prepared.
19         Let me ask both of the lawyers, have you received
20  and reviewed the presentence report, including any revisions
21  or addenda, and reviewed it with your client?
22  Mr. McCulloch?
23         MR. MCCULLOCH: Yes, sir.
24         THE COURT: Are there any objections I need to
25  take up at this time?

1              MR. MCCULLOCH:  Your Honor, today I think that we
2    have filed a withdrawal or a clarification of our status
3    today, which is there are no objections.
4              THE COURT:  Okay.
5              MR. MCCULLOCH:  We resolved those differences,
6    Your Honor, by agreements.
7              THE COURT:  All right.  Thank you.  Any objections
8    by the Government?
9              MR. DAY:  No, Your Honor.
10             THE COURT:  Thank you.  If there are no
11   objections, then I'll adopt the presentence report as my
12   findings of fact.
13             That will give us an applicable advisory guideline
14   range as follows:  Total offense level is 18.  Criminal
15   history category is I.  He is not eligible for probation.
16   Guideline range will be 27 to 33 months.  Supervised release
17   is two to five years.  He is unable to pay a fine.
18   Restitution is $614,154.37.  Special assessment fee is $100.
19             Any objection to the Court adopting that as the
20   applicable advisory guideline in the case?  Any objection by
21   the Government?
22             MR. DAY:  No, Your Honor.
23             THE COURT:  Any objection by the defense?
24             MR. MCCULLOCH:  No, Your Honor.
25             THE COURT:  All right.  Thank you.  I'll adopt it.

1    And I'll also note that I believe I had deferred acceptance
2    of the plea agreement because there were dismissal of other
3    counts.  For the record, I have accepted the plea agreement.
4             I note also that the Government filed an amended
5    motion.  It looks like, is it a second amended motion for
6    downward departure?  It looks like docket entry 152.  Is
7    that the last downward departure motion, based on 5K1.1?
8             MR. DAY:  Yes, Your Honor.
9             THE COURT:  Okay.  I'll be glad to hear from you
10   with regard to that motion, Mr. Day.
11            MR. DAY:  Your Honor, Special Agent, FBI Agent Tim
12   Quigley is here to provide additional facts --
13            THE COURT:  Okay.
14            MR. DAY:  -- in support of the motion.
15            THE COURT:  Be glad to hear from you, yes, sir.
16            AGENT QUIGLEY:  How are you doing, Your Honor?
17            THE COURT:  Fine.
18            AGENT QUIGLEY:  This came to our attention when a
19   Melissa Butterworth came to our office in Myrtle Beach.  She
20   is the girlfriend of Joseph Guernsey.  It was Joseph
21   Guernsey, Gus Olberding, and Melissa Butterworth that came
22   up with this scheme in which Melissa Butterworth was to be
23   utilized as what we call a straw buyer.
24            She lied on the residential loan application and
25   inflated her income and misrepresented her intent to occupy.

1    And this was very material for the financial institution to
2    award her the monies for the loan.
3              And she came to the attention of the Bureau and
4    mentioned that she was involved in this scheme with regards
5    to her boyfriend being paid by Mr. Olberding, to have her
6    actually be utilized as a straw buyer.
7              Throughout the course of the investigation, we
8    found her loan to be inaccurate.  She noted that she made
9    $15,000 a month employed at Southern Auto Sales when, in
10   fact, that wasn't the truth.  She was actually a nurse.
11             So all the material misrepresentation in that loan
12   was what actually awarded them the money to have
13   Mr. Olberding released from his home.
14             And then in further investigation, it was
15   determined that only two payments were actually ever made
16   with regards to this purchase.  So it was quite clear
17   throughout it all that it was fraudulent from the very
18   beginning.
19             The initial home was purchased by Brenna O'Shanecy
20   and Mr. Olberding in 2005.  When I investigated that, there
21   was two loans purchased on that, one for $446,000 and a
22   second loan for $111,500, and that was the initial loan
23   where Mr. Olberding purchased the home.
24             There was a refi a couple months later for an
25   additional $565,000.  When I looked at this documentation, I

1   saw that the gross monthly income as stated for
2   Mr. Olberding's wife was $17,500 a month as an account
3   executive for Data Source, LLC.
4            Again, through further investigation, when I
5   interviewed the individual that started this LLC, he said
6   that that was, in fact, fraudulent.  She never earned that
7   kind of money and never actually worked for that LLC.
8            So that brings us kind of to date where we are,
9   and the facts there in question I think are good.  That
10  brings us to the monetary amount.
11           Is that right, Mr. Day?
12           MR. DAY:  Yes.
13           AGENT QUIGLEY:  And then it was determined that on
14  July 18, 2012, BB&T provided a synopsis of accounts with
15  regards to the financial institution pertaining to Benedict
16  Guthrie Olberding, Social Security account number ending in
17  7101.  It stated that there were personal and business
18  accounts with regards to this BB&T of over 2 million
19  dollars.
20           As we look, these accounts were opened in January
21  13th of 2012.  Mr. Olberding had done a financial statement
22  to probation dated January 17th, and he failed to mention
23  these BB&T accounts.
24           Through an interview, a writer asked why, to which
25  he stated that he didn't believe that to be relevant.  So

1    that kind of just brings us where we are at now, Your Honor.
2              MR. DAY:  If I could add, Your Honor, after
3    Ms. Butterworth came in and self reported to the FBI, they
4    investigated, and they tracked the payment from
5    Mr. Olberding to T&T Auto Sales, which is Mr. Guernsey's car
6    dealership.  Then they met with Mr. Guernsey, and he
7    corroborated what they had already found.
8              MR. MCCULLOCH:  Mr. Olberding.
9              MR. DAY:  Mr. Olberding, I apologize -- met with
10   Mr. Olberding.  He had corroborated what they had found and
11   indicated a willingness to enter a guilty plea.  And we
12   believe that assisted us and was taken into account by
13   Mr. Guernsey when he decided to plead.
14             They both pled on the same day, but Mr. Olberding
15   had cooperated long before Mr. Guernsey.  And, of course,
16   his 302s were supplied to Mr. Guernsey's attorney and that
17   was taken into effect.
18             And as is also noted in there, and I cited the
19   Hairston case, I think it's really -- Your Honor's probably
20   read it.  It's more for the proposition that that can be
21   taken into account if the Court decides that this is an
22   exceptional restitution situation, and Your Honor, I'm sure,
23   knows you have signed forfeiture orders.
24             The Government seized a million dollars pursuant
25   to the forfeiture order from the accounts which Agent

1  Quigley was referring to.  And he's agreed to -- that
2  $855,000 of that will be applied either to restitution or
3  forfeiture or fine, whatever Your Honor determines there.
4  So that can be taken into account.
5        But as I said, he -- Mr. Guernsey, and I think
6  it's referred to in the defendant's memo correctly,
7  Mr. Guernsey had been under investigation for several other
8  criminal matters that we believed he was involved in.  And
9  he doesn't come to the table easily, so Mr. Olberding's
10 cooperating made it so we had two out of the three people.
11 And we believe that contributed to Guernsey's decision to
12 plea.
13       THE COURT:  Anything you want to tell me on the
14 5(k)(1) motion, Mr. McCulloch?  Of course, I'll hear from
15 you again, but just with regard to the 5(k)(1) motion.
16       MR. MCCULLOCH:  Well, Your Honor, I think it's
17 pertinent to note that there have been a couple of 5Ks,
18 actually maybe three -- I've lost track of them a little
19 bit -- the first one filed in June of last year.  And then
20 at the time of that filing we had entered into the agreement
21 of the Government of the recommendation that has been made
22 now in writing in the second revised or whatever it is which
23 is a recommendation of their -- Government's no opposition
24 to probation.  That was based in June upon the cooperation
25 and assistance.

1              And it is correct that Mr. Guernsey is a fellow
2    who has long been in the sights of the Government
3    investigating years before I presume he even knew
4    Mr. Olberding.
5              In the most recent motion or revised motion for
6    downward motion, a second amended revised motion for
7    downward departure, it encompasses a different -- an
8    additional rationale for this position of no opposition to
9    probation.
10             And I don't want to be redundant Your Honor, but,
11   gosh, that's why we're here.  This additional basis is that
12   Mr. Olberding and essentially his wife who is -- some of
13   this is her money, agreed to the forfeiture of 850 -- or the
14   relinquishment of $850,000, I think, roughly -- it's
15   specifically noted in there -- as a further and additional
16   grounds under the concept of extraordinary restitution.
17             But suffice it to say, in each of -- on each of
18   these bases the Government has agreed that they have no
19   opposition to probation.  That is our hope to pursue further
20   with your position, to pursue further with you, Your Honor.
21             THE COURT:  Is that correct, Mr. Day, the
22   Government has no objection to a probationary sentence for
23   this particular defendant?
24             MR. DAY:  That is correct, Your Honor.
25             THE COURT:  Let me ask probation to come here just

1    a second.

2           We'll stand at ease for a few minutes.

3           I see Mr. Holliday's out here.  Hello,

4    Mr. Holliday.

5           MR. HOLLIDAY:  Good to see you, Judge.  Thank you.

6           THE COURT:  How are you?

7           MR. HOLLIDAY:  Very good.  Thank you.

8           THE COURT:  As I understand it, Mr. Day's

9    indicated that the Government has -- based on the

10   substantial assistance and the anticipated restitution, the

11   Government has no objection to a probationary sentence for

12   this defendant; is that correct?

13          MR. DAY:  Yes, Your Honor.

14          THE COURT:  Okay.  Based on the written motion,

15   having listened to Mr. McCulloch and the Government, based

16   on what's been represented to me, I'll grant the 5(k)(1)

17   downward departure motion based primarily on his assistance

18   regarding Mr. Guernsey and the restitution.

19          And I would depart -- he's at a 18/I.  I would

20   depart seven levels.  That would put him at an offense level

21   11, 8- to 14-month range, after granting the 5(k)(1) motion.

22   He is entitled to the granting of the motion.  That is a

23   substantial departure, 5(k)(1) departure.

24          Having granted that, I'll be glad to hear from

25   you, Mr. McCulloch.  Anything else you want to tell me by

1    way of mitigation on behalf of Mr. Olberding?
2              MR. MCCULLOCH:  Your Honor, I am a firm believer,
3    especially at this hour of the night, in knowing when I'm
4    ahead of the game.  Your Honor, Mr. Holliday happily tells
5    us that Tiger is two under, so that's -- I can't wait to get
6    home and see that.
7              Your Honor, we have fully outlined in our
8    sentencing memorandum our belief that this is a proper
9    sentence, and we believe, Your Honor, that there is plenty
10   of factual support for it.  And I can tell you that
11   Mr. Guernsey [sic] meets all the prerogatives, all the
12   requirements of the 3553 to validate such a sentence of
13   probation.
14             Thank you very much.
15             THE COURT:  Thank you.
16             Mr. Olberding, anything you want to tell me?  I'll
17   be glad to hear from you.
18             DEFENDANT OLBERDING:  No, sir.  Except I'm very
19   sorry.  Thank you.
20             THE COURT:  Bear with me just a second, please.
21             Anything Mr. Day or Mr. Holliday?
22             MR. DAY:  No, Your Honor.
23             THE COURT:  Thank you.
24             Pursuant to the Sentencing Reform Act of 1984 as
25   modified by the Supreme Court in Booker and considering the

1  advisory guidelines and the factors under 18 U.S.C., Section
2  3553(a), I impose the following sentence:  It's the judgment
3  of the Court that the defendant, Benedict Guthrie Olberding,
4  is hereby sentenced to probation for five years.
5         It's further ordered the defendant shall pay
6  restitution in the amount of $614,154.37 to the victims
7  noted on the attached restitution payee list, jointly and
8  severally.  Restitution is due in full immediately.
9  Interest is waived.
10         This interest would be -- excuse me, this
11  restitution would be paid from the $855,000 referenced in
12  the consent settlement agreement.  I think it's docket entry
13  155.
14         While on probation, the defendant shall comply
15  with the mandatory and standard conditions of supervision
16  outlined in 18 U.S.C., Section 3563(a) and (b).
17         The defendant shall also comply with the following
18  special conditions:  Number one, for the first 14 months, he
19  shall be on home confinement with electronic monitoring.
20  Cost of such monitoring to be paid by the defendant.
21         Number two, the restitution will be paid in full
22  immediately.
23         Number three, the defendant shall not open any
24  additional lines of credit without the approval of the U.S.
25  Probation Office.

1            Number four, the defendant shall perform 100 hours
2   of community service, and I'm going to recommend to
3   probation that 10 of those hours be spent speaking to
4   realtor or mortgage broker groups about his offense and his
5   conviction.
6            It does not appear the defendant has the ability
7   to pay a fine; therefore, the fine is waived.  The defendant
8   shall pay the mandatory $100 special assessment fee, which
9   is due and payable immediately.
10            I have considered all the 3553(a) factors and find
11   that this is the appropriate sentence for Mr. Olberding.
12   This was serious conduct, fraudulent conduct he was involved
13   in.
14            I'll note also that I reviewed the sentencing
15   memorandum filed along with the numerous letters in
16   mitigation that were filed on behalf of the defendant by
17   counsel.
18            It looks like Mr. Olberding has a heck of a work
19   ethic and is fairly well respected and that this matter was
20   fairly out of character for him.  Again, I note he has no
21   criminal record.  But I think the consequences of his
22   actions have gotten his attention.  I hope so.
23            Again, I think that this is appropriate
24   punishment.  And will get his attention.  And I've
25   considered all the 3553(a) factors.  Again, I granted him a

1      generous 5(k)(1) based on his substantial assistance.
2                I find that restitution is appropriate, and I've
3      considered the statutory factors.  But make no mistake about
4      it, this was serious bank fraud.  And he certainly knows
5      better.  But I note he's also lost his professional license.
6                And unless there is objection -- I don't think
7      there is -- the preliminary order of forfeiture is
8      incorporated into the judgment.
9                All right.  Any objection to the form of my
10     sentence by the Government?
11               MR. DAY:  No, Your Honor.
12               THE COURT:  Any objection to the form of my
13     sentence by the defense?
14               MR. MCCULLOCH:  No, Your Honor.
15               THE COURT:  All right.
16               Mr. Olberding, you have the right to appeal.
17               Hold on just a second, please.
18               As I understand it, in your plea agreement, I
19     believe, he waived his right to appeal, did he not?
20               MR. MCCULLOCH:  Your Honor, I think that's
21     correct.
22               THE COURT:  That's what I was looking for.
23               MR. DAY:  I don't think so, Your Honor.
24               No, he did not, Your Honor.
25               THE COURT:  All right.  Bear with me just a

1     second.

2              All right, thank you.  Mr. Olberding, you have the

3     right to appeal.  Any notice of appeal must be filed within

4     14 days of the entry of the judgment.  If you want to appeal

5     and cannot afford an attorney, the Court will appoint one

6     for you.

7              I'm instructing Mr. McCulloch to consult with your

8     client and within 14 days file a notice of appeal or a

9     signed waiver of appeal.

10             Good luck, Mr. Olberding.

11             MR. MCCULLOCH:  Thank you very much, Your Honor.

12             DEFENDANT OLBERDING:  Thank you.

13             MR. HOLLIDAY:  Thank you, Judge.

14             (Concluded at 6:06 p.m.)

```
                                                                    16

 1                      CERTIFICATE OF REPORTER

 2

 3         I certify that that the foregoing is a correct

 4   transcript from my stenographic notes in the above-entitled

 5   matter.

 6

 7   s/Mary A. Schweinhagen

 8   _____        April 24, 2013

 9   Mary A. Schweinhagen, RMR, CRR

10
...
25
```

Mary A. Schweinhagen, RMR, CRR   (843) 615-3224